**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| REGOR PHARMACEUTICALS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO.    4:26-cv-5610 |
| | § | |
| MIN ZHONG, CARD BIOSCIENCES | § | JURY TRIAL DEMANDED |
| INC., and JOHN DOES 1–10, | § | |
| | § | |
| *Defendants*. | § | |

<u>**PLAINTIFF'S VERIFIED COMPLAINT**</u>

**TABLE OF CONTENTS**

I. Nature of the Action..........................................................................................................1

II. The Parties ....................................................................................................................2

III. Jurisdiction and Venue................................................................................................4

IV. Factual Allegations .....................................................................................................6

    A.   Regor and the Corporate Enterprise.........................................................................6

    B.   Regor's Governing Documents and Governance Framework ...........................6

    C.   Dr. Qiu's Role and Controlling Position..................................................................8

    D.   The Forensic Investigation Into Min's Misconduct...............................................9

    E.   Min's Pattern of Financial Dishonesty and Misappropriation.........................11

    F.   The Vetoed $428 Million Dividend and Min's Motive ......................................13

    G.   The July 7, 2026 Coordinated Takeover Attempt...............................................14

    H.   The Ultra Vires "Suspension" Communications ................................................14

    I.   Min's Attempted Seizure of Bank Accounts and Computer Systems .............18

    J.   Irreparable Harm and the Need for Emergency Relief.......................................19

V. Causes of Action .......................................................................................................22

COUNT I:    Declaratory Judgment (28 U.S.C. §§ 2201–2202)..............................................22

COUNT II:    Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030)..................24

COUNT III:    Breach of Fiduciary Duty..............................................................................25

COUNT IV:    Conversion and Attempted Conversion .................................................................26

COUNT V:    Tortious Interference with Contracts and Prospective Business Relations ..........27

COUNT VI:    Civil Conspiracy ..................................................................................................27

COUNT VII:    Temporary, Preliminary, and Permanent Injunctive Relief..................................28

COUNT VIII: Fraud ........................................................................................................29

COUNT IX:    Aiding and Abetting Breach of Fiduciary Duty....................................................30

COUNT X: Violation of Texas Wiretap Act (Tex. Civ. Prac. & Rem. Code § 123.001 Et. Seq…31

VI. Prayer for Relief ...................................................................................................................31

VII. Jury Demand......................................................................................................................32

Plaintiff Regor Pharmaceuticals, Inc. ("Regor" or the "Company" or "Plaintiff"), by and through its undersigned counsel, files this Verified Complaint against Defendants Min Zhong, also known as Zhong Min ("Min"), CARD BioSciences Inc. ("CARD"), and John Does 1–10, and in support thereof alleges as follows:

## I.    NATURE OF THE ACTION

1.    This is an emergency action to stop a corporate coup. Regor is a Houston-headquartered Delaware pharmaceutical company holding, together with its affiliates, close to one billion dollars in cash and money-market assets and a portfolio of approximately thirty drug candidates. On July 7, 2026, Defendant Min—a suspended officer and stakeholder who is the subject of an ongoing forensic investigation into domicile fraud, false reimbursement, and misappropriation of Company funds—traveled to Regor's Houston headquarters and orchestrated the forcible removal of the Company's founder, Chief Executive Officer, and shareholder, Dr. Xiayang Qiu, from the Company's Houston office and simultaneously caused the President of Regor's U.S. operations, Dr. Xiaotian Zhu, to be removed from the Company's Boston office.

2.    Min, individually or purporting to act as a representative of CARD, then caused a series of communications to be circulated to Regor's employees, banks, and business partners falsely proclaiming that Dr. Qiu had been "suspended," that Dr. Qiu's authority—including his signatory authority over the Company's bank accounts—had been "revoked," and that Min had "assumed responsibility for the overall operations" of Regor and all affiliated entities. In furtherance of this scheme, Min transmitted a letter dated July 7, 2026 to UBS Financial Services (the "UBS Letter"), addressed to UBS's account manager, purporting to act "[f]or and on behalf of Regor Pharmaceuticals, Inc." and directing UBS to immediately revoke Dr. Qiu's signatory authority, block all of Dr. Qiu's access to the Company's accounts, and refuse to process any

1

transaction initiated by Dr. Qiu. Those actions were undertaken without authority, in violation of the Company's governing documents and Delaware law, and are void.

3.      The purported "suspension" was retaliation. Weeks earlier, Dr. Qiu, exercising his veto rights, had blocked a proposed four-hundred-and-twenty-eight-million-dollar ($428,000,000) dividend that Min and his allies sought to extract from the enterprise. The July 7 takeover attempt is a naked effort to seize control of Regor's bank accounts and assets before the forensic investigation into Min's conduct is complete, and to move the Company's cash beyond the reach of the Company and this Court.

4.      Plaintiff seeks: (a) a declaratory judgment that Min and CARD's purported suspension and removal of Dr. Qiu, revocation of his authority, and assumption of control over Regor are ultra vires, unauthorized, and void; (b) redress for Min's unauthorized access to and attempted seizure of the Company's protected computer and financial systems in violation of the Computer Fraud and Abuse Act and the Texas Wiretap Act; (c) damages for breach of fiduciary duty, fraud, conversion, tortious interference, misappropriation of trade secrets, aiding and abetting, and civil conspiracy; and (d) immediate temporary, preliminary, and permanent injunctive relief preserving the status quo and preventing the dissipation of the Company's assets.

## II.      THE PARTIES

5.      Plaintiff Regor Pharmaceuticals, Inc. is a corporation organized and existing under the laws of the State of Delaware, incorporated on August 13, 2019, with its principal place of business at 7501 Fannin St, Floor 8, Houston, Texas 77054. Regor maintains its corporate headquarters in Houston and has additional offices in Boston, Massachusetts and San Diego, California.

6.      Dr. Xiayang Qiu is an individual and the founder, Chief Executive Officer, and a director of Regor. Dr. Qiu is also the founder, Chief Executive Officer, and significant shareholder

2

of Regor's ultimate parent, CARD BioSciences Inc. ("CARD"). Dr. Qiu is referenced herein for factual context but is not a plaintiff in this action.

7.     Defendant Min Zhong, also known as Zhong Min, is an individual who, upon information and belief, ordinarily resides in Connecticut, frequently travels to the People's Republic of China, and holds a United States passport. Min held the nominal title of Chief Operating Officer within the corporate group and is a founder-level stakeholder. As alleged below, on or about July 7, 2026, Min directed certain individuals to appear at the Company's Houston office in an attempt to orchestrate Dr. Qiu's removal from the Company. Min may be served at either 19 Harvest Glen, East Lyme, Connecticut 06333, wherever he may be found, or by such other means as this Court may direct, including pursuant to Fed. R. Civ. P. 4(f).

8.     Defendant CARD BioSciences Inc. is an exempted company incorporated under the laws of the Cayman Islands (Company Number 346259), with its registered office at the offices of Ogier Global (Cayman) Limited, 89 Nexus Way, Camana Bay, Grand Cayman, KY1-9009, Cayman Islands. CARD is Regor's sole stockholder and the parent holding company of the enterprise. CARD, acting through its four Investor Directors, issued the July 7, 2026 communications that are the subject of this action, directed those communications at Regor's Houston-based employees and U.S. financial institutions, and purported—without authority—to suspend Regor's CEO, revoke his signatory authority over Regor's Texas bank accounts, and install Min as Regor's operational controller. CARD may be served at Ogier Global (Cayman) Limited, 89 Nexus Way, Camana Bay, Grand Cayman, KY1-9009, Cayman Islands.

9.     Defendants John Does 1–10 are individuals whose identities are presently unknown to Plaintiff and who, at Min's direction, participated in the July 7, 2026 removal of Dr. Qiu and Regor's President, Dr. Zhu, from the Company's Houston and Boston offices, including

3

individuals who held themselves out as "authority" or law enforcement. Plaintiff will amend this Complaint to name these Defendants once their identities are ascertained.

### III.     JURISDICTION AND VENUE

10.     This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under the laws of the United States, namely the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. The Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy. Alternatively, this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2) because this is a civil action between citizens of a State and citizens or subjects of a foreign state in which the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. Regor is a citizen of Delaware and Texas; Min is, upon information and belief, a citizen of the People's Republic of China and/or Connecticut; and CARD is an exempted company incorporated in the Cayman Islands.

11.     This Court has authority to grant the declaratory relief sought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and to grant the injunctive relief sought under Fed. R. Civ. P. 65, because an actual, immediate, and justiciable controversy exists between the parties concerning the control, management, and assets of Regor.

12.     This Court has *specific personal jurisdiction* over Defendant Min under the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE § 17.042, and consistent with due process. Min purposefully availed himself of the privilege of conducting activities in Texas by directing and participating in the forcible removal of Dr. Qiu from the Company's Houston office and the attempted seizure of the Company's Houston-based operations, records, and financial systems. Moreover, Min, individually or purporting to act as a representative of CARD, was motivated to seize control of the Company's assets to prevent the ongoing forensic investigation from

4

uncovering the full extent of his misconduct and to gain access to funds before the investigation was complete. Plaintiff's claims arise directly out of and relate to those Texas contacts. The exercise of jurisdiction over Min comports with traditional notions of fair play and substantial justice.

13.    Personal jurisdiction over Min is further supported by his tortious conduct directed at Texas, including the transmission of false communications concerning the Company's Houston headquarters, employees, and Texas bank accounts, which Min knew would cause, and which did cause, injury in Texas.

14.    This Court has *specific personal jurisdiction* over Defendant CARD under the Texas long-arm statute, Tex. Civ. Prac. & Rem. Code § 17.042, and consistent with due process. CARD committed a tort in whole or in part in Texas by directing the July 7, 2026 communications at Regor's Houston headquarters and Houston-based employees, by instructing Regor's Texas-based banks (including JPMorgan and Bank of America) to revoke Dr. Qiu's signatory authority, and by purporting to suspend the CEO of a Texas-headquartered company and install a replacement—all of which CARD knew would cause, and did cause, immediate injury in Texas. Plaintiff's claims arise from and relate to these purposeful Texas-directed contacts, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

15.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including at Regor's Houston headquarters, and under § 1391(b)(3) because Min and CARD are subject to personal jurisdiction in this District. Assignment to the Houston Division is proper because the operative events occurred in Harris County, Texas.

## IV.     FACTUAL ALLEGATIONS

### A.     Regor and the Corporate Enterprise

16.     Regor is an innovative drug-discovery and development company. Its founder, Dr. Qiu, built the enterprise from inception. In 2018, the enterprise discovered a breakthrough oncology compound and later monetized related assets in a transaction with a major pharmaceutical company. The enterprise currently has approximately thirty drug candidates in development, roughly half in discovery and half in clinical stages.

17.     Regor is the operating company for the enterprise's United States activities and is headquartered in Houston, Texas. The enterprise holds, in the aggregate, cash and money-market assets approaching one billion dollars, a substantial portion of which is held in United States bank and money-market accounts, including accounts at UBS, JPMorgan, and Bank of America.

18.     The enterprise is organized in a multi-tier structure. CARD is a Cayman Islands holding company that sits at the top of the structure. CARD owns one hundred percent (100%) of the equity of Regor Pharmaceuticals, Inc. (the U.S. operating company). CARD also owns one hundred percent (100%) of RG Therapeutics Limited (a Hong Kong company), which in turn owns one hundred percent (100%) of Qilu Regor Therapeutics Inc. (a PRC operating company, the "WFOE"). CARD, RG Therapeutics, Regor, and the WFOE are referred to as the "Group Companies."

19.     Critically, Regor is a separate Delaware corporation with its own board of directors and its own governing documents. Regor's sole stockholder is CARD. Regor's authorized capital consists solely of 2,000,000 shares of common stock; Regor has issued no preferred stock.

### B.     Regor's Governing Documents and Governance Framework

20.     Regor's Amended and Restated Certificate of Incorporation (the "Certificate") contains no provision authorizing the removal of a director by the board, no provision authorizing

any parent entity's board to remove or suspend a Regor director or officer, and no provision permitting a supermajority of any board to strip an officer of authority. Under the Certificate, the power to elect and remove Regor's directors resides with Regor's stockholder, consistent with the Delaware General Corporation Law.

21.     Under 8 Del. C. § 141(k), a director of a Delaware corporation may be removed only by the holders of a majority of the shares then entitled to vote at an election of directors— that is, by stockholder action—and not by the board of directors and not by the board of a parent entity.

22.     The governance of the Group Companies is further set forth in an Amended and Restated Shareholders Agreement dated February 13, 2021 (the "Shareholders Agreement"), to which CARD, Regor, the other Group Companies, the Founders (including Dr. Qiu and Min), and the investors are parties, and the Third Amended and Restated Memorandum and Articles of Association of CARD BioSciences Inc. (effective September 15, 2023) (the "CARD Articles"). The Shareholders Agreement establishes a five-member board for CARD consisting of one "Founder Director" (designated by the Founders) and four "Investor Directors" (two designated by Antibiotics HK, one by LAV, and one by Loyal Valley Capital). Section 10.17 of the Shareholders Agreement provides that the Shareholders Agreement "shall prevail in all respects" over the Charter Documents of any Group Company in the event of any conflict.

23.     Section 6.3 provides that no board meeting may proceed, and no quorum exists, unless a majority of directors is present that includes the Founder Director. Although Section 6.3 contains a fallback provision permitting an adjourned meeting to proceed without the Founder Director if the Founder Director's absence is the sole cause of the quorum failure and five business days' advance notice has been provided, that fallback provision is inapplicable here for multiple

independent reasons: (a) no five-business-day advance notice of the original meeting was provided to the Founder Director; (b) no adjourned meeting was convened; (c) the Founder Director's absence was not voluntary but was the result of Defendants' own failure to provide notice; and (d) even if an adjourned meeting had been held, the matters discussed would have been "limited to those stated in the written notices of the Board meetings," and no such prior notice was given. Section 7.1(x) independently provides that "the appointment and removal of, and the determination of the compensation package of[,] any senior management officer of any Group Company (including without limitation the chief executive officer, the chief operating officer . . . and the chief financial officer)" requires approval of the board "including the affirmative votes of the Founder Director and all of the Investor Directors." Section 7.2(2) further provides that the board "shall not dismiss the chief executive officer without cause or a proper reason."

24.     Accordingly, no removal or suspension of Dr. Qiu as an officer or director of Regor, and no divestment of his authority, could lawfully occur without (a) stockholder action at the Regor level under Delaware law, and (b) as to any Group Company officer, the affirmative vote of the Founder Director—Dr. Qiu himself. The Investor Directors, acting alone, had no authority to suspend or remove Dr. Qiu or to install Min in his place.

**C.     Dr. Qiu's Role and Controlling Position**

25.     Dr. Qiu is the founder of the enterprise, the Chief Executive Officer and a director of Regor, and the Chief Executive Officer and a director of CARD. He was among the four initial directors named in Regor's original Certificate of Incorporation, together with Dr. Xiaotian Zhu, Min, and Wenge Zhong.

26.     Upon information and belief and in accordance with the Company's governing documents, Dr. Qiu holds veto rights over specified corporate actions at CARD and Regor.

8

Specifically, the Shareholders Agreement and the CARD Articles establish the following protections:

(a) Section 6.3 of the Shareholders Agreement and Article 70 of the CARD Articles provide that no meeting of CARD's Board of Directors (or any Group Company board) may proceed without a quorum that includes the Founder Director, the LAV Director, and one Antibiotics HK Director—meaning that no valid board action can be taken at a meeting from which Dr. Qiu is excluded or absent;

(b) Section 7.1 of the Shareholders Agreement and Section 5.1 of Exhibit A to the CARD Articles provide that the Company "shall not take, permit to occur, approve, authorize, or agree or commit to do" any of nineteen categories of reserved matters—including the appointment and removal of senior management officers (such as the CEO and COO), the payment or declaration of any dividend, the approval of the annual budget or business plan, and the amendment of any constitutional document—"unless approved in writing by the Board in advance (including the affirmative votes of the Founder Director and all of the Investor Directors);"

(c) Section 7.2(2)(i) of the Shareholders Agreement and Section 5.2(b)(i) of Exhibit A to the CARD Articles provide that "the Board shall not dismiss the chief executive officer without cause or a proper reason," and that any such dismissal requires "affirmative votes of more than half of the Directors;" and

(d) Section 6.2(ii) of the Shareholders Agreement and Article 69 of the CARD Articles provide that a director designated under the agreement may be removed "either for or without cause, only upon the vote or written consent of the Person or group of Persons then entitled to designate such Director," and that the parties agree "not to seek, vote for or otherwise effect the removal of any such Director without such vote or written consent."

27.     These provisions, taken together, give Dr. Qiu an absolute blocking right over all reserved matters—including officer removal and dividend declarations—and ensure that no material corporate action can be taken over his objection or without his affirmative approval.

**D.     The Forensic Investigation Into Min's Misconduct**

28.     Beginning in or about 2024, the enterprise identified evidence of financial irregularities and retained a forensic accountant, Shana Seelhorst, the Company's Controller, to investigate. On May 5, 2026, Ms. Seelhorst issued a Forensic Accounting Report titled "Project

9

Domicile" (certified May 13, 2026), concluding that there was "reasonable indication to support the allegation of double domicile fraud" by Min and recommending further legal review. The investigation, together with a related compliance investigation subsequently conducted by outside counsel to an affiliated Group Company, has developed evidence that Min, individually or purporting to act as a representative of CARD, among other things: (a) caused Company funds to be paid to himself as purported "contractor" compensation for work not performed; (b) opened and used a shell company through which Company-related funds were moved between 2018 and 2022; (c) engaged in a sustained, multi-year tax-domicile fraud scheme and provided false and inconsistent representations of his residence to Company payroll systems, banks, and tax authorities in multiple jurisdictions, exposing the Company to tax penalties and direct financial loss as further described below; and (d) caused payments to be made to persons who performed no bona fide services.

29.    The forensic investigation found that, within a period of approximately two years, Min claimed or attempted to claim domicile in at least three different jurisdictions: Bellevue, Washington (a claim later withdrawn); Orlando, Florida; and East Lyme, Connecticut. Company records—including Min's Form I-9, Form W-4, and Form CT-W4—identify Min's residence as 19 Harvest Glen, East Lyme, Connecticut 06333, a property that has been registered in Min's name since August 2007, that underwent no transfer of title or change of ownership in the twenty-four months preceding the investigation, and at which the substantial majority of Min's personal expenditures occurred. Min reported Connecticut state-tax wages at this address for tax year 2023.

30.    Notwithstanding the foregoing, Company payroll records (maintained through the ADP system) show that Min changed his address of record to 5806 Masters Boulevard, Orlando, Florida 32819 on November 1, 2024, and, beginning in tax year 2024, declared state-tax wages in

10

Florida—a state that levies no individual income tax. Florida property records reflect that the actual owners of 5806 Masters Boulevard are Gu Qun and Lin Min, not Min, that those owners (not Min) have claimed and secured a homestead exemption on the property, and that no lease has ever been filed with the county reflecting Min's tenancy or occupancy of the property. Upon information and belief, the property is zoned for commercial use and was, until its dissolution in 2023, associated with a limited liability company registered in the names of Min, Hua Gao, and Qun Gu.

31. Min's change of address triggered a forced reapportionment of the Company's U.S. taxable income to Florida notwithstanding that the Company has no assets, sales, or business operations in that state. As a direct result, the Company incurred a corporate income-tax loss of approximately $48,845, and a subsequent $80,000 prepayment made in reliance on the false Florida apportionment was, upon final audit settlement, only partially offset—leaving approximately $31,155 of the Company's working capital forcibly and, upon information and belief, permanently withheld by state tax authorities as a non-refundable credit in a state in which the Company conducts no business.

32. The forensic accounting investigation found no evidence that Min habitually resided at either the Orlando or the Bellevue addresses, and concluded that Min's residency claims were inconsistent across financial institutions, tax authorities, and Company records, and were undertaken to avoid state income taxation and to obtain financial or legal benefits to which Min was not entitled.

**E.      Min's Pattern of Financial Dishonesty and Misappropriation**

33. Min's domicile fraud is part of a broader and long-standing pattern of financial dishonesty. A May 22, 2026 Compliance Investigation Report prepared by Shanghai Lanbai Law Firm, outside counsel retained by Qilu Regor Therapeutics Inc. (the PRC operating subsidiary within the enterprise), found that Min submitted false housing-rental contracts and invoices to

obtain individual income-tax preferential treatment to which he was not entitled. For 2024, Min submitted a rental contract for a residence on Pulian Road, Baoshan District, Shanghai, reflecting rent of RMB 37,500 per month—approximately eight times the market rate of RMB 4,500 per month for that property, as confirmed by public listing data. For 2025 and 2026, Min submitted a rental contract for a residence on Gaoqing Road, Pudong New Area, Shanghai, falsely representing the unit's floor area as 189 square meters when the property's actual area is 88.97 square meters, with a market rental value of no more than RMB 7,200 per month against the RMB 29,800 per month Min claimed.

34.     The Lanbai investigation further found, based on Company driver logs and Min's own accommodation registration filed with the PRC Exit-Entry Administration Bureau, that Min never actually resided at either address, and that Min in fact resided at a third, undisclosed address at Greentown Yulan Garden, Pudong. The investigation concluded that Min's motive of "false reimbursement and pursuit of personal gain were long-term and consistent, rather than spur-of-the-moment or mere improper handling."

35.     The Lanbai investigation separately found that, on April 23, 2026, Min, individually or purporting to act as a representative of CARD, and despite knowing that his access to a Company shared folder had been closed in connection with a legitimate adjustment to his job responsibilities, pressured Company IT personnel to reopen his access, falsely representing that he would report the matter to Dr. Qiu, the Company's Chief Executive Officer. Min never made any such report. During the approximately twenty-five-minute window in which his access was improperly restored, Min downloaded 473 Company files, including Company board resolutions, Company financial statements, and Dr. Qiu's personal data. The Company has no record of any

business justification for Min's access to or download of any of these materials, including but not limited to the CEO's personal information.

36. As a result of these findings, Min was suspended with pay from his operational role months before the events at issue. Min's suspension was known within the enterprise prior to July 7, 2026.

**F.      The Vetoed $428 Million Dividend and Min's Motive**

37. In or about late May 2026, CARD's Board declared a dividend of approximately four hundred twenty-eight million dollars ($428,000,000) payable to CARD's shareholders. In a first tranche, approximately one hundred million dollars ($100,000,000) of that dividend was transferred from Regor to CARD. Dr. Qiu, exercising his veto rights as Founder Director—specifically, the required affirmative vote under Section 7.1(xiv) of the Shareholders Agreement for any "payment or declaration of any dividend on the Equity Securities of any Group Company"—vetoed the proposed dividend and directed that the distribution not proceed. Following Dr. Qiu's veto, the $100 million was transferred back to Regor approximately one week before the July 7, 2026 incident. CARD's compliance with Dr. Qiu's veto—by reversing the transfer rather than proceeding over his objection—constitutes CARD's own recognition and acknowledgment that Dr. Qiu's veto right under Section 7.1(xiv) is valid, binding, and enforceable, and that no dividend may lawfully be paid without his affirmative consent.

38. Within approximately one week of Dr. Qiu's veto, Min, individually or purporting to act as a representative of CARD, launched the July 7, 2026 takeover attempt described below. The temporal proximity, and the substance of the actions—which were directed at seizing control of the Company's bank accounts and assets—demonstrate that the purported "suspension" of Dr. Qiu was retaliatory and pretextual.

**G.      The July 7, 2026 Coordinated Takeover Attempt**

39.      On or about July 7, 2026, Min orchestrated his agents to travel to Houston, Texas. At Regor's Houston headquarters, Min's agents, purporting to act as representatives of CARD, together with individuals acting at Min's direction (John Does 1–10), caused Dr. Qiu to be escorted out of the Company's Houston office. Certain of the individuals present held themselves out as "authority" or law enforcement but declined to identify themselves or produce credentials.

40.      Simultaneously, Min and individuals acting in coordination with Min removed Dr. Xiaotian Zhu, the President of Regor's U.S. operations, from Regor's Boston office, which is located within a shared workspace operated by Cambridge Innovation Center ("CIC"). According to a contemporaneous incident report prepared by CIC's Senior Relationship Manager, Cambridge Police officers arrived at the CIC premises before 10:00 a.m. on July 7, 2026, stating that they had been called to escort someone off the premises. CIC staff escorted the officers to the Regor offices, where Regor staff were expecting them. A short interview was conducted between a Regor staff member, the officers, and an unidentified individual in a business suit who appeared to be a Regor guest; the individual in the suit stated the matter had to do with "another location." CIC confirmed that the Cambridge Police departed the building before Dr. Zhu was escorted off the premises— not by police, but by an individual in a business suit. Security footage captured the individuals involved.

41.      The coordinated, same-morning removals of the Company's two most senior U.S. executives were designed to seize physical and operational control of Regor and to create the false public impression that a lawful change of control had occurred.

**H.      The Ultra Vires "Suspension" Communications**

42.      In connection with the takeover attempt, Min, individually or purporting to act as a representative of CARD, caused three written communications, each dated July 7, 2026, to be

14

issued and circulated: (a) a "Board letter" to Dr. Qiu purporting to suspend him as CEO of CARD and "from any management position" in each subsidiary, "namely" the WFOE, RG Therapeutics, and Regor Pharmaceuticals Inc.; (b) a bilingual "Board letter to staff" announcing the purported suspension to all employees of the Group Companies; and (c) a "Confidential Memorandum— CEO Suspension Notice" to all staff.

43.     The Board letter to Dr. Qiu was issued by CARD, purportedly on authority of the Investor Directors of CARD acting alone. It asserted, as its sole claimed "Authority for Suspension," that "[e]ach of the Investor Directors, together being a majority of all directors . . . have jointly and unanimously approved" the suspension. It was signed by four Investor Directors of CARD (identified as Chen Lianbing, Shi Yi, Shen Li, and Xie Ronggang) and copied to Min as "COO." It purported to install Min as the person "responsible for the overall operations of the Company" and all Group Companies, and to prohibit Dr. Qiu from, among other things, accessing the Group Companies' premises, systems, email, records, and "bank accounts or financial systems."

44.     The all-staff communications, issued in the name of the CARD board, went further—instructing employees that "[a]ny purported exercise of authority by Mr. Qiu is unauthorised [sic] and shall be treated as void"—including "whether purportedly in his capacity as CEO, as a director, or otherwise"—and directing that all matters be routed to Min. The Confidential Memorandum, also issued by the CARD Board, represented that "Mr. Qiu's signatory authority on all bank accounts of the Group Companies has been immediately revoked, and all banks and financial institutions have been instructed as such." In contrast to these CARD-level communications, Min separately and independently transmitted the UBS Letter to UBS Financial Services, signing it in his own name "[f]or and on behalf of Regor Pharmaceuticals, Inc."—a

15

separate legal entity for which Min had no authority to act—directing the bank to immediately revoke Dr. Qiu's signatory authority over Account No. CPF3299, to block all access by Dr. Qiu to the Company's UBS accounts, and to refuse to process any transaction authorized by Dr. Qiu— and further threatening UBS with liability for any failure to comply.

45.    These communications were false and unauthorized. As set forth above, the Investor Directors of CARD had no power to suspend or remove Dr. Qiu as an officer or director of Regor, a Delaware corporation; the removal or suspension of any Group Company officer required the affirmative vote of the Founder Director (Dr. Qiu) under Section 7.1(x) of the Shareholders Agreement—a requirement that cannot be satisfied by majority vote under any provision; no valid board action could be taken without a quorum including the Founder Director under Section 6.3; no five-business-day advance notice was provided as required by Section 6.3 and Article 71 of the CARD Articles; and no stockholder action authorized by Delaware law and Regor's Certificate of Incorporation was taken. The purported suspension, removal, and divestment of authority are therefore void.

46.    It is important to distinguish the separate capacities in which Min purported to act— and the separate bases on which each was unauthorized. The three written communications of July 7 (the Board letter to Dr. Qiu, the Board letter to staff, and the Confidential Memorandum) were each issued in the name of the Board of CARD BioSciences Inc. and signed by the four Investor Directors of CARD. To the extent these communications purported to effect corporate action of CARD, they were unauthorized because they failed to satisfy the quorum, notice, and voting requirements of Sections 6.3 and 7.1(x) of the Shareholders Agreement and Articles 70 and 71 of the CARD Articles, as set forth above.

47.     To the extent these communications purported to effect corporate action of Regor—a separate Delaware corporation—they were doubly unauthorized because no action was taken by Regor's own board or sole stockholder. In contrast, the UBS Letter was signed by Min individually, who identified himself as acting "[f]or and on behalf of Regor Pharmaceuticals, Inc." Min had no actual authority to bind Regor: he was not a director of Regor, he was not an officer authorized to act on Regor's behalf, and no valid corporate action of Regor conferred such authority on him. Nor did Min possess apparent authority, because no principal with power to bind Regor—i.e., Regor's duly authorized CEO or its board—made any representation to UBS or to any third party that Min was authorized to act for Regor. The purported CARD board resolution, which was itself void for the reasons stated herein, cannot supply apparent authority to bind a separate legal entity. Accordingly, Min's actions on behalf of Regor were unauthorized, fraudulent, and void, and his actions purportedly on behalf of CARD were likewise ultra vires and void.

48.     Moreover, the CARD Board's own governing documents require that written notice of each board meeting, together with the agenda and all materials to be presented, must be sent to all directors at least five (5) business days before the meeting. Upon information and belief, no such notice was provided to the Founder Director (Dr. Qiu) prior to July 7, 2026. The failure to provide the requisite five-day advance notice renders the purported board action procedurally defective and void ab initio, independent of the quorum and voting deficiencies described above.

49.     Additionally, although Defendants purported to convene a meeting of the Board of Directors of Regor Pharmaceuticals, Inc. on July 7, 2026, that meeting was attended exclusively by the four Investor Directors. The Founder Director—Dr. Qiu—was not given notice, was not present, did not participate, and did not vote. Because no valid quorum existed without the Founder Director under Section 6.3 of the Shareholders Agreement and Article 70 of the CARD Articles,

17

the purported meeting was void. Moreover, no written consent of Regor's board of directors or its sole stockholder was obtained, and no separate corporate action of any kind was validly taken at the Regor subsidiary level to authorize the suspension of its CEO, the revocation of his signatory authority, or the transfer of operational control to Min. The purported actions with respect to Regor therefore also fail for want of any valid corporate action by the entity itself.

## I.    Min's Attempted Seizure of Bank Accounts and Computer Systems

50.    The evident purpose and effect of the July 7 actions was to seize control of the Company's bank accounts, money-market accounts, and financial and computer systems. Min, acting purportedly on behalf of CARD and without authority from Regor, represented to the Company's banks and financial institutions that Dr. Qiu's signatory authority had been revoked and that authority had passed to Min, and sought to have Min placed on, or restored to, the Company's accounts. In the UBS Letter, Min, signed "[f]or and on behalf of Regor Pharmaceuticals, Inc." and specifically directed UBS to designate him as the sole authorized contact for the Company's UBS accounts and instructed UBS to notify him immediately if Dr. Qiu attempted any access to or operation on those accounts. Min had no authority to act for or bind Regor, and his purported signature on behalf of Regor was unauthorized and fraudulent.

51.    Min's representations to the banks were false, and, upon inquiry, the banks confirmed that no valid instruction changing authorized signatories had been received from the Company through proper corporate authority. Nonetheless, Min's continuing efforts—including the UBS Letter, which expressly threatens UBS with "full liab[ility] for any and all losses" if it fails to comply with Min's instructions—threaten imminent, unauthorized access to Company accounts holding hundreds of millions of dollars.

52.    Upon information and belief, Min, individually or purporting to act as a representative of CARD, and persons acting at his direction accessed, attempted to access, and/or

18

caused to be accessed, without authorization, Regor's protected computers and electronic systems—including its email, financial, and records systems—and caused monitoring or surveillance software ("spyware") to be installed on Company computers and an electronic listening device to be placed in Company offices. A forensic investigation conducted by the Company's retained forensic accountant and IT security personnel has confirmed the presence of unauthorized monitoring software on Company servers and the existence of an electronic listening device at Company facilities. These intrusions were discovered prior to July 7, 2026, and (upon information and belief) IT personnel allied with Min facilitated the installation. Regor's computers and systems are used in and affect interstate and foreign commerce.

53.    Because Min was suspended and had no authority to act for Regor, his access to and attempted access to Regor's protected computers and financial systems on and after July 7, 2026 was without authorization and/or exceeded any authorization he may once have had.

**J.    Irreparable Harm and the Need for Emergency Relief**

54.    Absent immediate relief, Plaintiff faces imminent and irreparable harm. If Min, individually or acting in concert with CARD, gains access to the Company's bank and money-market accounts, he is positioned to transfer hundreds of millions of dollars offshore—including to entities in the People's Republic of China and the Cayman Islands—beyond the practical reach of the Company and this Court, where recovery would be difficult or impossible. CARD's status as a Cayman Islands holding company makes this risk acute: CARD controls the offshore structure through which enterprise funds could be moved beyond the jurisdiction of United States courts.

55.    Min and CARD's false communications to employees, banks, and business partners are causing immediate and irreparable harm to Regor's corporate governance, control, goodwill, and relationships, and are sowing confusion as to who is authorized to act for the Company. The July 7 communications were issued in the name of CARD's Board and directed at Regor's

19

employees, banks, and business partners in the United States. CARD, through its Investor Directors, purported to suspend Regor's CEO, revoke his signatory authority over Regor's bank accounts, and install Min as Regor's operational controller—all without valid corporate authority at either the CARD or Regor level. Money damages alone cannot adequately remedy the loss of control of the Company, the disruption of its operations, or the threatened dissipation of its assets.

56.     The improper removal of Dr. Qiu as CEO causes irreparable harm that is distinct from, and not compensable by, money damages. Dr. Qiu is the founder who conceived and built the enterprise's drug-discovery platform, recruited its scientific team, and personally directed its research strategy for over eight years. His removal deprives the Company of the singular individual whose scientific vision, institutional knowledge, and relationships with regulators, clinical investigators, and pharmaceutical partners cannot be replaced or replicated. The Shareholders Agreement itself recognizes this reality by granting the Founder Director a veto over senior-management changes, a structural protection that was circumvented by the July 7 actions. The loss of a founder-CEO's leadership during a critical phase of clinical development is a paradigmatic irreparable injury for which no post-hoc damages award can substitute.

57.     The harm from the underlying corporate dispute itself is independently irreparable. CARD, acting through its Investor Directors without the required consent of the Founder Director, has created a governance crisis in which two competing factions each claim authority to manage a company holding nearly one billion dollars in liquid assets. The competing directives issued by CARD's Investor Directors (through Min) and by Dr. Qiu (as the duly authorized CEO) have fractured the enterprise's chain of command, paralyzed day-to-day decision-making, and created a governance vacuum that cannot be quantified or compensated after the fact. Employees, counterparties, banks, and regulators are unable to determine whose instructions carry legal force,

20

a condition that erodes institutional credibility with every passing day and that no post-hoc damages award can remedy.

58. In addition to the financial and governance harms described above, Plaintiff faces irreparable harm to the Company's ongoing research and development operations. The minutes of the purported July 7, 2026 board meeting expressly identify one of the stated grounds for the suspension as the allegation that Dr. Qiu "conducted a large-molecule (macromolecule) project R&D without Board approval." This allegation, combined with Min's assumption of operational control over all "R&D functions" as stated in the July 7 communications, constitutes a direct and immediate threat to the Company's ongoing pharmaceutical research programs. The Company currently has dozens of drug candidates in various stages of development. The large-molecule program specifically challenged involves the development of biologic therapies squarely within the Company's core business, and if disrupted, the program's momentum, data integrity, intellectual property, and regulatory timeline may be irretrievably lost. The Company has approximately half a dozen employees involved in this program. The project has an almost nominal cost to the Company—on the order of a couple of million dollars per year—yet has the potential to generate commercially significant drug candidates in a therapeutic space where the first product to reach the market may be worth billions of dollars more than subsequent entrants. Any interruption or delay in the Company's drug development pathway risks the permanent forfeiture of first-mover advantage. These R&D-related harms are distinct from and in addition to the threatened financial dissipation and are equally irreparable. The purported grounds for suspension cannot overcome the business judgment rule because these projects relate directly to the core business of the Company and were known to and presented to the board on multiple prior occasions.

## V.   CAUSES OF ACTION

**COUNT I:   DECLARATORY JUDGMENT (28 U.S.C. §§ 2201–2202)**

59.   Plaintiff re-alleges and incorporates by reference each preceding paragraph as if fully set forth herein.

60.   An actual, present, and justiciable controversy exists between Plaintiff and Defendants Min and CARD concerning the validity of the purported July 7, 2026 suspension and removal of Dr. Qiu, the revocation of his authority, and Min and CARD's claimed authority to control Regor and its assets.

61.   Under Section 6.3 of the Shareholders Agreement and Article 70 of the CARD Articles, no meeting of CARD's Board may proceed without a quorum that includes the Founder Director. Under Section 7.1 of the Shareholders Agreement and Article 5.1 of the CARD Articles, nineteen categories of reserved matters—including the "appointment and removal of . . . any senior management officer of any Group Company (including without limitation the chief executive officer)"—require the "affirmative votes of the Founder Director and all of the Investor Directors."

62.   The Founder Director never received notice of, attended, voted at, or consented to any board action purporting to suspend the Founder Director. Five business-days' advance notice was not provided as required by Article 71 of the CARD Articles. The Founder Director's affirmative vote was neither sought nor obtained. Section 10.17 of the Shareholders Agreement provides that the Shareholders Agreement "shall prevail in all respects" over the Charter Documents. The purported suspension is therefore void.

63.   Even if the lower threshold of Section 7.2(2)(i) of the Shareholders Agreement applied—which requires "affirmative votes of more than half of the Directors" for CEO dismissal—that provision imposes a mandatory substantive limitation: "the Board shall not dismiss the chief executive officer without cause or a proper reason."

22

64.    The July 7 letter cited three purported grounds: (1) conducting large-molecule R&D without Board approval; (2) establishing U.S. headquarters in Houston without Board approval; and (3) entering into an employment contract with Regor without Board approval. None constitutes "cause."

65.    The Company's R&D activities, Houston operations, and the Founder Director's compensation have been the subject of multiple board presentations and resolutions known to and approved by all directors, including a 2023 executive-compensation resolution signed by every director. The actual motive for the July 7 actions was the Founder Director's exercise, approximately six weeks earlier, of contractual veto rights under Section 7.2(xiv) of the Shareholders Agreement to block a proposed $428 million dividend.

66.    Plaintiff is entitled to a declaratory judgment that: (a) the purported suspension and removal of Dr. Qiu as an officer and director of Regor is ultra vires, unauthorized, and void; (b) the purported revocation of Dr. Qiu's authority, including his signatory authority over Regor's bank and financial accounts, is void and of no effect; (c) Dr. Qiu remains the duly authorized Chief Executive Officer and a director of Regor, with full authority to act on the Company's behalf; (d) neither Min nor CARD holds authority to act for, bind, manage, or control Regor or to access or direct Regor's bank accounts, financial systems, or computer systems; (e) the July 7, 2026 communications—including the UBS Letter—purporting to effect the foregoing are void; (f) the UBS Letter dated July 7, 2026 directed to UBS Financial Services is unauthorized, fraudulent, and of no legal force or effect; and (g) no valid corporate action—whether at the CARD board level or at the Regor subsidiary level—was taken to authorize the suspension, removal, or divestment of Dr. Qiu's authority.

23

67.     A judicial declaration is necessary and appropriate to resolve the controversy, to guide the conduct of the Company's banks, employees, and business partners, and to prevent further unauthorized conduct by Min and CARD.

**COUNT II:     VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)**

68.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as if fully set forth herein.

69.     Regor's computers and electronic systems are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2) because they are used in and affect interstate and foreign commerce and communication.

70.     Min, personally and through John Does 1–10, intentionally accessed and/or attempted to access Regor's protected computers without authorization and/or in excess of authorization, in violation of 18 U.S.C. § 1030(a)(2) and (a)(4), and knowingly caused the transmission of code or commands (including surveillance software) and thereby intentionally caused damage without authorization, in violation of 18 U.S.C. § 1030(a)(5).

71.     Min separately and independently violated 18 U.S.C. § 1030(a)(2) and (a)(4) on or about April 23, 2026, when he obtained restored access to a Company shared folder, from which his access had been properly removed, by falsely representing to Company IT personnel that he would report his access request to the Chief Executive Officer—a report he never made—and then used that improperly obtained access to download, without authorization or legitimate business purpose, 473 Company files, including Company board resolutions, financial statements, and the Chief Executive Officer's personal data, within an approximately twenty-five-minute window.

24

72.    Min's conduct was undertaken with intent to defraud and to further the fraudulent scheme of seizing control of the Company's assets, and/or to obtain information from the Company's protected computers.

73.    As a direct and proximate result, Regor has suffered damage and loss, including losses aggregating at least $5,000 in value during a one-year period within the meaning of 18 U.S.C. § 1030(c)(4)(A)(i)(I), including costs of responding to the offense, conducting damage assessments, and restoring the security and integrity of its systems, as well as the costs of investigating and remediating the April 23, 2026 unauthorized download of 473 Company files described above.

74.    Pursuant to 18 U.S.C. § 1030(g), Regor is entitled to compensatory damages and to injunctive and other equitable relief.

**COUNT III:  BREACH OF FIDUCIARY DUTY**

75.    Plaintiff re-alleges and incorporates by reference each preceding paragraph as if fully set forth herein.

76.    As an officer and director-level fiduciary of Regor and the Group Companies, Min owed Regor fiduciary duties of loyalty, care, and good faith.

77.    Min breached those duties by, among other things, misappropriating and attempting to misappropriate Company funds; attempting to seize control of the Company's bank accounts and assets for improper purposes; orchestrating the unauthorized removal of the Company's CEO and President; disseminating false statements about the Company's governance; and acting in his own interest and in retaliation for the vetoed dividend, contrary to the interests of the Company.

78.    Min's breaches of fiduciary duty further include his sustained tax-domicile fraud scheme, which caused the Company direct financial harm of approximately $48,845 in lost corporate tax benefits and approximately $31,155 in forcibly withheld working capital; his

25

submission of false rental documentation to an affiliated Group Company to obtain tax benefits to which he was not entitled; and his April 23, 2026 unauthorized and pretextual downloading of 473 Company files, including confidential board resolutions, financial statements, and the Chief Executive Officer's personal data, none of which breaches Min disclosed to the Board.

79.     As a direct and proximate result of Min's breaches, Regor has been damaged in an amount to be proven at trial, and is entitled to disgorgement of any improper benefits and to injunctive relief.

## COUNT IV:  CONVERSION AND ATTEMPTED CONVERSION

80.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as if fully set forth herein.

81.     Regor owns and has the right to immediate possession and control of its funds, bank and money-market accounts, records, and other property.

82.     Min and CARD have wrongfully exercised and attempted to exercise dominion and control over Regor's property, including by attempting to seize control of the Company's bank accounts—through, among other things, CARD's July 7, 2026 board resolutions purporting to revoke Dr. Qiu's signatory authority and Min's transmission of the UBS Letter directing UBS to revoke Dr. Qiu's access to Account No. CPF3299 and to recognize Min as the sole authorized representative—and to divert the Company's funds, in denial of and inconsistent with Regor's rights.

83.     Min and CARD's conduct has caused and threatens to cause injury to Regor. Regor is entitled to damages and to injunctive relief preventing the completion of the threatened conversion.

26

## COUNT V:    TORTIOUS INTERFERENCE WITH CONTRACTS AND PROSPECTIVE BUSINESS RELATIONS

84.    Plaintiff re-alleges and incorporates by reference each preceding paragraph as if fully set forth herein.

85.    Regor has existing contractual and business relationships with its banks and financial institutions, its employees, and its business partners.

86.    Min and CARD, with knowledge of those relationships, willfully and intentionally interfered with them—including by CARD's issuance of the July 7, 2026 communications directing employees to disregard the Company's lawful management and instructing banks to revoke Dr. Qiu's signatory authority; Min's transmission of the UBS Letter to UBS Financial Services directing it to revoke Dr. Qiu's signatory authority and block his access; Min and CARD's issuance of similar false instructions to JPMorgan Chase and Bank of America; and Min's direction that business be routed to himself—through independently tortious and unlawful means.

87.    Min and CARD's interference was a proximate cause of injury to Regor, entitling Regor to damages and injunctive relief.

## COUNT VI:   CIVIL CONSPIRACY

88.    Plaintiff re-alleges and incorporates by reference each preceding paragraph as if fully set forth herein.

89.    Min, CARD (acting through its Investor Directors), and John Does 1–10 (and, upon information and belief, others) had a meeting of the minds on a common objective: to seize unlawful control of Regor and its assets and to remove Dr. Qiu from control. In furtherance of that common objective, CARD's Investor Directors convened the July 7, 2026 board meeting without notice to the Founder Director and adopted resolutions purporting to suspend Dr. Qiu and install Min; CARD caused the suspension communications to be circulated to the Company's employees,

27

banks, and business partners; Min transmitted the UBS Letter on July 7, 2026, directing UBS to revoke Dr. Qiu's authority and to recognize Min as the Company's sole authorized representative; and the John Doe Defendants simultaneously executed the coordinated physical removal of Dr. Qiu and Dr. Zhu from the Company's offices.

90. In furtherance of that objective, they committed one or more unlawful, overt acts, including the acts alleged above, and Regor suffered injury as a proximate result. Each conspirator is jointly and severally liable for the resulting damages.

**COUNT VII: TEMPORARY, PRELIMINARY, AND PERMANENT INJUNCTIVE RELIEF**

91. Plaintiff re-alleges and incorporates by reference each preceding paragraph as if fully set forth herein.

92. For the reasons set forth herein and in Plaintiff's contemporaneously filed Application for a Temporary Restraining Order and Preliminary Injunction, Plaintiff has a substantial likelihood of success on the merits, faces a substantial threat of imminent and irreparable harm for which there is no adequate remedy at law, the threatened harm to Plaintiff outweighs any harm to Defendants, and the requested relief will not disserve the public interest.

93. Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief under Fed. R. Civ. P. 65, including relief: (a) enjoining Min and CARD from holding themselves out as authorized to act for Regor; (b) enjoining Min and CARD from accessing or attempting to access Regor's bank accounts, financial systems, and protected computers; (c) enjoining Min and CARD from transferring, dissipating, or encumbering Regor's assets; (d) enjoining Min and CARD from interfering with Dr. Qiu's exercise of his authority; (e) enjoining Min and CARD from challenging, halting, redirecting, or interfering with any ongoing research and development program, clinical trial, or scientific activity of Regor; (f) directing that the July 7, 2026 communications—including

the UBS Letter—be rescinded or corrected; and (g) directing UBS Financial Services, JPMorgan Chase Bank, N.A., Bank of America, N.A., and any other financial institution that received communications from Min or CARD, to disregard all instructions contained in such communications.

**COUNT VIII: FRAUD**

94. Plaintiff re-alleges and incorporates by reference each preceding paragraph as if fully set forth herein.

95. Min made material misrepresentations of fact regarding his primary residence and domicile to Company payroll systems and, upon information and belief, tax authorities, on specific, identifiable occasions, including: (a) his November 1, 2024 change of his address of record in the Company's ADP payroll system from 19 Harvest Glen, East Lyme, Connecticut to 5806 Masters Boulevard, Orlando, Florida, a property Min did not own, lease, or habitually occupy; and (b) his subsequent declaration, beginning in tax year 2024, of Florida state-tax wages notwithstanding his continuous, uninterrupted ownership of, and the substantial majority of his personal expenditures at, the Connecticut property.

96. Min knew these representations were false, or made them with reckless disregard for their truth, given that Min at all relevant times owned, resided at, and financially maintained the Connecticut property, and neither owned, leased, nor maintained any lease of record at the Florida property, which was and remains owned by Gu Qun and Lin Min.

97. Min made these misrepresentations with the intent that the Company's payroll and tax systems rely on them to apportion Min's compensation, and thereby the Company's taxable income, to Florida, and the Company did in fact so rely, to its detriment.

98. As a direct and proximate result of Min's fraud, the Company incurred a corporate income-tax loss of approximately $48,845 and has had approximately $31,155 of its working

29

capital forcibly and, upon information and belief, permanently withheld by a state taxing authority as a non-refundable credit, in a state in which the Company conducts no business.

99.    Min separately and independently committed fraud on or about April 23, 2026, when he falsely represented to Company information-technology personnel that he intended to report a request for restored access to a Company shared folder to the Chief Executive Officer, when in truth Min had no such intention and never made any such report. Min made this misrepresentation with the intent to induce Company personnel to restore his access to confidential Company systems beyond the scope of his then-current authorization, and Company personnel reasonably relied on that misrepresentation in restoring Min's access.

100.    As a direct and proximate result of this fraud, Min gained unauthorized access to, and downloaded, 473 Company files, including Company board resolutions, financial statements, and the personal data of the Company's Chief Executive Officer, causing damage to the Company in an amount to be proven at trial, including the cost of investigating and remediating the breach.

101.    Plaintiff is entitled to actual and exemplary damages for Min's fraud, in an amount to be proven at trial.

**COUNT IX:   AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**

102.    Plaintiff re-alleges and incorporates by reference each preceding paragraph as if fully set forth herein.

103.    John Does 1-10 knowingly participated in, substantially assisted, and encouraged Min's breach of his fiduciary duties to Regor by issuing the July 7, 2026 communications purporting to suspend Dr. Qiu and install Min as operational controller, by directing employees to disregard Dr. Qiu's lawful authority, and by instructing banks to revoke Dr. Qiu's signatory authority and recognize Min—all with knowledge that such actions lacked proper corporate authorization and were undertaken for Min's personal benefit.

104. John Does 1-10's participation was a substantial factor in causing the injuries to Regor described herein, and John Does 1-10 are jointly and severally liable for the resulting damages.

**COUNT X: VIOLATION OF THE TEXAS WIRETAP ACT (TEX. CIV. PRAC. & REM. CODE § 123.001 ET SEQ.)**

105. Plaintiff re-alleges and incorporates by reference each preceding paragraph as if fully set forth herein.

106. Min, personally and through persons acting at his direction, intentionally intercepted, endeavored to intercept, and/or procured other persons to intercept or endeavor to intercept wire, oral, and/or electronic communications of Regor and its employees, in violation of TEX. PENAL CODE § 16.02, by causing surveillance software to be installed on Company computers to capture electronic communications and by placing an electronic listening device in Company offices to intercept oral communications—all without the consent of any party to such communications.

107. Pursuant to TEX. CIV. PRAC. & REM. CODE § 123.002, Regor is entitled to recover the greater of (a) actual damages, (b) $100 for each day of violation, or (c) $10,000, together with punitive damages, reasonable attorneys' fees, and litigation costs.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants, and grant the following relief:

a. A declaratory judgment as set forth in Count I;

b. Temporary, preliminary, and permanent injunctive relief as set forth in Count VII and in Plaintiff's Application for a Temporary Restraining Order and Preliminary Injunction;

c.      Compensatory damages in an amount to be proven at trial, including damages under 18 U.S.C. § 1030(g) and for fraud, and statutory damages under Tex. Civ. Prac. & Rem. Code §§ 134.005 and 134A.004;

d.      Disgorgement of all improper benefits obtained by Defendants, and the imposition of a constructive trust over any Company property or funds in Defendants' possession or control;

e.      Exemplary and punitive damages to the extent permitted by law;

f.      Treble damages and/or statutory damages as provided by the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A.004, and the Texas Wiretap Act, Tex. Civ. Prac. & Rem. Code § 123.002;

g.      Pre- and post-judgment interest as allowed by law;

h.      Plaintiff's costs and reasonable attorneys' fees to the extent permitted by law; and

i.      Such other and further relief as the Court deems just and proper.

## VII.      JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 15, 2026

Respectfully Submitted,

COKER & COKER, PLLC

/s/*Kyle A. Coker*
Kyle A. Coker
Texas Bar No. 24115353
kyle@cokerlawoffice.com
Kaitlyn M. Coker
Texas Bar No. 24115264
kaitlyn@cokerlawoffice.com
Sydney P. Renfro
Texas Bar No. 24142135
sydney@cokerlawoffice.com
901 Main Street, Suite 5330
Dallas, TX 75202

*And*

MUNSCH HARDT KOPF & HARR, P.C.

By: /s/ *Stephen J. Huschka*
Stephen J. Huschka
Texas Bar No. 2409861
shuschka@munsch.com
Dr. Chad J. Ray
Texas Bar No. 24106754
cray@munsch.com
Zachary A. Ford
Texas Bar No. 24116373
zford@munsch.com
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard St., Suite 4000
Dallas, TX 75201
Telephone: (214) 880-1034
Facsimile: (214) 855-7584

Sara Prasatik
Texas Bar No. 24088251
sprasatik@munsch.com
Munsch Hardt Kopf & Harr, P.C.
700 Milam Street, Suite 800
Houston, TX 77002-2806
Telephone: (713) 222-1470

**ATTORNEYS FOR PLAINTIFF**

33

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **REGOR PHARMACEUTICALS, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **MIN ZHONG, CARD BIOSCIENCES** | § | |
| **INC., AND JOHN DOES 1-10,** | § | |
| | § | |
| *Defendants.* | § | |

**DECLARATION OF SHANA SEELHORST IN SUPPORT OF VERIFIED COMPLAINT**

I, Shana Seelhorst, declare under penalty of perjury under the laws of the United States of America as follows:

1.      I am over the age of eighteen, of sound mind, competent to make this declaration, and fully capable of testifying to the matters set forth herein. I make this declaration based on my personal knowledge and, where expressly stated, on information and belief formed after reasonable inquiry.

2.      I am employed as the Accounting Controller of Regor Pharmaceuticals, Inc. ("Regor"). In this role, I am familiar with Regor's accounting systems, financial records, billing and payment processes, internal controls relating to revenue and expense recognition, and recordkeeping practices.

3.      I am authorized by Regor to execute this declaration and to verify specified factual allegations on its behalf for purposes of filings in this case.

4.      I have reviewed the Complaint filed in the above-captioned matter, including the paragraphs identified below.

Docusign Envelope ID: 6B0298D6-1325-8105-84F4-87EB5FFF37F9

5.      I have personal knowledge of the facts set forth in paragraphs 17-19, 28, 30, 32-37, 40, 73, 78, and 96-97 of the Complaint, which are true and correct.

6.      I am the Accounting Controller for Regor, and I am a custodian of records for Regor. The Exhibits referenced in and attached to the Complaint are true and correct copies of the documents they purport to be, or are duplicates made from records maintained in the ordinary course of business by Regor. Making records of this type was a regular practice.

7.      I make this declaration for the purpose of attesting to the truth of the allegations in the Complaint for all purposes allowed by law, including Rule 11 and applicable evidentiary rules, and for use at any hearing or trial in this matter, including any hearing on Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction, or as otherwise directed by the Court.

8.      If called to testify, I could and would testify competently to the matters stated herein.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 15, 2026 at Houston, Texas.

Signed by:

*Shana Seelhorst*

7C0CAE1D52564A1...

Shana Seelhorst
Accounting Controller, Regor Pharmaceuticals, Inc.